# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON et al., )<br><br>Plaintiffs, )<br><br>v. )<br><br>NATIONAL ARCHIVES AND RECORDS ADMINISTRATION et al., )<br><br>Defendants. ) | Case No. 20-cv-00739 (APM) |

## MEMORANDUM OPINION AND ORDER

### I.

In December 2019, Defendant National Archives and Records Administration ("NARA") approved a schedule for disposing of certain records belonging to Defendant U.S. Immigration and Customs Enforcement ("ICE"). Plaintiffs[1] filed suit challenging the approval. This court previously ruled largely in Plaintiffs' favor, vacating the disposition schedule for five of the six records categories at issue and remanding those categories to NARA for further consideration. *Citizens for Resp. & Ethics in Wash. v. Nat'l Archives & Recs. Admin.* (*CREW*), No. 20-cv-00739 (APM), 2021 WL 950142, at *10 (D.D.C. Mar. 12, 2021).

Plaintiffs now move the court for an award of attorney's fees pursuant to the Equal Access to Justice Act ("EAJA"). Pls.' Mot. for Atty's Fees, ECF No. 23 [hereinafter Pls.' Mot.], Pls.' Mem. in Supp. of Pls.' Mot., ECF No. 23-1 [hereinafter Pls.' Mem.]. For the reasons that follow, Plaintiffs' motion is granted.

---

[1] Plaintiffs are Citizens for Responsibility and Ethics in Washington, the American Historical Association, and the Society for Historians of American Foreign Relations (collectively, "Plaintiffs").

## II.

Under the EAJA, unless otherwise provided by statute,

> a court shall award to a prevailing party other than the United States
> fees and other expenses . . . incurred by that party in any civil
> action . . . , including proceedings for judicial review of agency
> action, brought by or against the United States . . . , unless the court
> finds that the position of the United States was substantially justified
> or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A)–(B).  The plaintiff must establish itself to be a "prevailing party"; if it does so, the government bears the burden of showing that its position was "substantially justified." *See LePage's 2000, Inc. v. Postal Regul. Comm'n*, 674 F.3d 862, 866 (D.C. Cir. 2012).  If a prevailing party establishes entitlement to a fee, it then must demonstrate the "reasonableness" of its request.  *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004); 28 U.S.C. § 2412(d)(2)(A).

### A.

Defendants concede that Plaintiffs prevailed on the merits.  *See generally* Defs.' Opp'n to Pls.' Mot., ECF No. 27 [hereinafter Defs.' Opp'n].  They nevertheless maintain that Plaintiffs are not entitled to a fee award because Defendants' position was substantially justified.  Defs.' Opp'n at 8–18.  Alternatively, Defendants argue that Plaintiffs' requested fee award is not reasonable. It should be discounted, they contend, by one sixth to account for the fact that the court only vacated and remanded NARA's decision as to five of the six records categories at issue.  *Id.* at 18–20.  The court takes each argument in turn.

### B.

"A position is substantially justified if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact."  *SecurityPoint Holdings, Inc. v. TSA*, 836 F.3d 32, 39 (D.C. Cir. 2016) (internal quotation marks omitted).  Meeting that burden requires something more

than showing that the agency's position was "merely undeserving of sanctions for frivolousness," *Pierce v. Underwood*, 487 U.S. 552, 565–66 (1988), but does not require "establish[ing] that it was correct—indeed, since the movant is established as a prevailing party it could never do so." *Air Transp. Ass'n of Can. v. FAA*, 156 F.3d 1329, 1332 (D.C. Cir. 1998).

The government's "position" is defined by statute to include both its litigation position in court and "the action or failure to act by the agency upon which the civil action is based." 28 U.S.C. § 2412(d)(2)(D); *see also Role Models*, 353 F.3d at 967 ("The government . . . must demonstrate the reasonableness not only of its litigating position, but also of the agency's actions."); *see also Am. Wrecking Corp. v. Sec'y of Lab.*, 364 F.3d 321, 325–26 (D.C. Cir. 2004). The court considers both "the agency's prelitigation conduct and the Department of Justice's subsequent litigation positions" separately but makes "only one threshold determination for the entire civil action." *Comm'r, INS v. Jean*, 496 U.S. 154, 159 (1990).  *See Am. Wrecking Corp.*, 364 F.3d at 325–26 (approaching analysis in "piecemeal fashion").

*NARA's Decisionmaking:* As a preliminary matter, the parties disagree over precisely which portion of the agency's actions comprise "the government's position."  Pls.' Reply, ECF No. 29 [hereinafter Pls.' Reply], at 2.  Defendants characterize it as "NARA's decision to approve [ICE's] Schedule." Defs.' Opp'n at 8.  Plaintiffs, on the other hand, describe it as NARA's "failure to address relevant public comments and binding agency policy."  Pls.' Reply at 2.  Plaintiffs have the better of the argument.

The D.C. Circuit has held that "a 'holistic' approach to the government's position is contrary to EAJA, and that the relevant 'position' of the government is that which corresponds to the claim or aspect of the case on which the private party prevailed." *Jacobs v. Schiffer*, 204 F.3d 259, 264 (D.C. Cir. 2000) (internal citation omitted).  So, for example, in *SecurityPoint Holdings*

the D.C. Circuit said that the agency bore the burden "of showing that the underlying action—*the failure to address critical arguments made by [the plaintiff]*—was substantially justified," rather than the plaintiff's "principal argument" before the agency.  836 F.3d at 40 (emphasis added). Here, Plaintiffs prevailed not on whether NARA's approval of ICE's schedule was reasonable but on NARA's "fail[ures] to consider an important aspect of the problem" and to "respond to 'relevant' and 'significant' public comments."  *CREW*, 2021 WL 950142, at *7 (quoting *Home Box Office, Inc. v. FCC*, 567 F.2d 9, 35 & n.58 (D.C. Cir. 1977)) (citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).  It is these failures then (and the government's subsequent defense of them in litigation) that the court is tasked with considering.

"Courts evaluating substantial justification must . . . analyze *why* the government's position failed in court." *Taucher v. Brown-Hruska*, 396 F.3d 1168, 1174 (D.C. Cir. 2005).  Courts disfavor an agency's action when "it was wholly unsupported by the text of the applicable regulations." *Role Models*, 353 F.3d at 967 (internal quotation marks omitted).  Courts also look less favorably on instances where the challenged action is "flatly at odds with the controlling case law" but are more sympathetic where "the government lost because an unsettled question was resolved unfavorably." *Taucher*, 396 F.3d at 1174 (internal quotation marks omitted).

NARA's challenged actions lacked substantial justification for two related reasons:  (1) the agency did not meaningfully address a critical factor—research value—in evaluating whether to permanently retain ICE records, and (2) it failed to respond to substantive comments directed to that factor.  *Id.*  NARA's governing statute and its internal Appraisal Policy expressly obligated the agency to "consider the research value of the records in ICE's Disposition Schedule." *CREW*, 2021 WL 950142, at *7.  Congress required NARA, when evaluating a disposition schedule, to

4

determine whether "any of the records listed in a list or schedule . . . do not, or will not after the lapse of the period specified, have sufficient administrative, legal, *research*, or other value to warrant their continued preservation by the Government." 44 U.S.C. § 3303a(a) (emphasis added). Appendix 1 of the agency's Appraisal Policy required NARA staff to ask, "How significant are the records for research?" and, in answering that question, instructed that "[i]t is *necessary* to consider the kinds and extent of current research use and to try to make inferences about anticipated use both by the public and by the Government."[2]  Yet, NARA's evaluation of research value was wholly inadequate.  "The record before [the] court . . . [did] not reveal that NARA considered current research use or made inferences about the anticipated use of documents in future research." *CREW*, 2021 WL 950142, at *8.  Its analysis was cursory or nonexistent as to multiple records categories.  *See id.*  The agency thus violated a basic duty under the APA:  to provide an explanation that is sufficient to allow a court to understand the agency's methodology.  *Id.* (citing *Nat'l Wildlife Fed'n v. EPA*, 286 F.3d 554, 564 (D.C. Cir. 2002)).

NARA compounded its error by neglecting to address "numerous comments touting the current and anticipated future research value of the records and criticizing the agency for not properly measuring their true value."  *Id.*  Instead, NARA summarily responded that the "anticipated research use will be more contemporary rather than many years into the future," without explaining *how* the agency came to that conclusion.  *Id.*  Giving such short shrift to substantive comments about a key factor in the agency's decisionmaking flew in the face of well-established precedent.  *See id.* (citing *Gresham v. Azar*, 950 F.3d 93, 103 (D.C. Cir. 2020)).

That NARA's decisionmaking lacked substantial justification is supported by the D.C. Circuit's decision in *Hill v. Gould*.  In that case, the question at issue in the underlying

---

[2]  *Appraisal Policy of the National Archives*, NAT'L ARCHIVES & RECORDS ADMIN. ¶ 9 & App. 1 (Sept. 2007), https://www.archives.gov/records-mgmt/scheduling/appraisal (emphasis added).

litigation was whether the Secretary of the Interior had erroneously denied protection to a species of bird, the mute swan, under the Migratory Bird Treaty Act ("MBTA"). *Hill v. Gould*, 555 F.3d 1003, 1005 (D.C. Cir. 2009). The Secretary had not designated the mute swan for protection based on her reading of treaty language that excluded the mute swan from the definition of "migratory bird" because it was a nonnative bird. The Secretary lost on appeal, not because the court deemed her reading of the treaty to be incorrect, but because her litigation position was a "post hoc rationalization[]" and the record otherwise "was utterly silent on any basis, let alone any reasonable basis, to support exclusion of the mute swan from the *List of Migratory Birds*." *Id.* at 1008 (internal quotation marks omitted). The plaintiff then filed for attorney's fees and expenses under the EAJA, which the district court denied. In affirming that decision, the D.C. Circuit stated that, at the fee stage, "an inadequate agency record is not necessarily fatal." *Id.* That is because the adequacy of an agency's explanation, the court observed, is in some cases "logically unrelated to whether the underlying agency action is unjustified under the organic statute." *Id.* (quoting *FEC v. Rose*, 806 F.2d 1081, 1088 (D.C. Cir. 1986)). The court found that, because the Secretary had taken "a reasoned position on a novel issue, and the sparse agency record did not obviously defy the requirements of the [APA]," the agency had shown its position to be substantially justified. *Id.* (internal quotation marks omitted). In so ruling, the court contrasted that circumstance with one in which "[t]he void in the record did not result from the Secretary's failure to respond to relevant and significant comments." *Id.* (internal quotation marks omitted). The plaintiff had "identified no comment by any party concerning the exclusion of nonnative birds" during the rulemaking process. *Id.*

Here, in contrast, the "void in the record" resulted from NARA's inattention to its basic duties under the APA. It failed to adequately address a key statutory and regulatory factor—

research value—when evaluating the ICE records for permanent retention.  *See CREW*, 2021 WL 950142, at *8.  And it failed to meaningfully respond to numerous commenters who touted the current and anticipated research value of the records.  *Id.*  Therefore, unlike in *Hill*, NARA's shortcomings were logically related to its decision not to permanently retain certain categories of ICE's records.  The procedural failures and the ultimate decision were inextricably intertwined.

The D.C. Circuit's decision in *SecurityPoint Holdings* also supports a finding that NARA's actions lacked substantial justification.  There, a plaintiff advertising firm mounted a challenge to a proposed TSA change to an advertising program at airport security checkpoints.  *SecurityPoint Holdings,* 836 F.3d at 40.   The plaintiff authored a letter "urging TSA to rescind the" changes, and the agency refused.  *Id.*  TSA authored a response that "was wholly unresponsive" and failed to show the agency engaged with or even considered the plaintiff's arguments.  *Id.*  The D.C. Circuit held that TSA's "indifference seems sufficiently beyond ordinary 'arbitrary and capricious' agency action to qualify as lacking substantial justification."  *Id.*  Defendants try to distinguish *SecurityPoint Holdings* by focusing on how NARA "adequately responded to many of the concerns raised by commenters" and "did not entirely ignore [Plaintiffs'] concerns about research value."  Defs.' Opp'n at 11–12.  But the court is unpersuaded.  To be sure, NARA did not *completely* ignore those commenters who emphasized the long-term research value of the ICE records, but the agency's response was far from adequate.  NARA merely stated that the records "anticipated research use will be more contemporary than many years into the future," without offering any explanation of how it reached that conclusion.  *See CREW*, 2021 WL 950142, at *8.  NARA grappled with neither "the kinds and extent of current research use" nor "inferences about anticipated use," as the Appraisal Policy required.  *See id.*  So, while NARA may not have been "wholly unresponsive" to relevant and significant comments, its one-sentence answer was not

substantially justified. *See FEC v. Rose*, 806 F.2d 1081, 1089 (D.C. Cir. 1986) (recognizing that in certain cases an agency's inadequate explanation "may so obviously defy the requirements of the APA as to compel a finding that the underlying action was not 'substantially justified' under [the] EAJA").

Defendants' reliance on various district court decisions does not help their cause. *See* Defs.' Opp'n at 10–13; Pls.' Reply at 4–5. In *Ivy Sports Medicine, LLC v. Burwell*, the court denied fees where the key question before the agency "rested on the resolution of two competing principles of statutory construction that arise in the administrative law field," but the agency erred in not explaining its position on the question. 174 F. Supp. 3d 130, 140 (D.D.C. 2016). In *Tripoli Rocketry Ass'n v. ATF*, the court found ATF's decision to classify certain material as an explosive substantially justified where the agency was deferring to a "long-standing agency interpretation" and "rel[ying] on scientific authorities." 698 F. Supp. 2d 168, 176 (D.D.C. 2010). And in *Summer Hill Nursing Home LLC v. Sebelius* the court held the agency's decision that the plaintiff had violated its "must bill" policy was substantially justified, even though it "failed to explain why [the plaintiff's] belated submission of remittance advices was insufficient to satisfy the . . . policy." 677 F. Supp. 2d 181, 186–87 (D.D.C. 2010). Each of these cases is fundamentally different from this one. In none of them did the agency give, at best, cursory treatment to a statutory and regulatory factor essential to its decisionmaking and to substantial comments directed to that factor. NARA's errors here were so obvious that they cannot be deemed substantially justified.

*NARA's Litigation Positions.* The court also finds that Defendants' positions while litigating this case were not substantially justified. The court briefly reviews two.

First, Defendants argued that, although Appendix 1 of the Appraisal Policy required NARA to consider records' research value, it was merely "one of myriad factors that appraisers consider

together . . . and that NARA had no obligation to specifically address each."  Defs.' Opp'n at 14 (internal quotation marks omitted).  While the court agreed that the Appendix did "not create some rote, box-checking exercise," it held that "once, as here, NARA receives numerous comments discussing the research value of records in dispute, it has a duty to respond to such comments and to explain its reasoning."  *CREW*, 2021 WL 950142, at *8.  Defendants' position, the court concluded, was flatly contrary to settled Circuit precedent.  *See id.* (first citing *HBO*, 567 F.2d at 35–36 (explaining that "a dialogue is a two-way street: the opportunity to comment is meaningless unless the agency responds to significant points raised by the public"); and then citing *Gresham v. Azar*, 950 F.3d 93, 103 (D.C. Cir. 2020) (stating that more is required of the agency than "to note the concerns of others and dismiss those concerns in a handful of conclusory sentences"), *vacated as moot*, *Arkansas v. Gresham*, 142 S. Ct. 1665 (2022)).

Second, Defendants defended NARA's sparse conclusory statement that certain categories of the ICE records contained "little or no research value" by claiming the statement was merely a "shorthand phrase" for internal NARA use that Plaintiffs did not understand.  Defs.' Reply in Supp. of Defs.' Cross-Mot. for Summ. J., ECF No. 18, at 8.  Defendants do not attempt to defend this argument at this stage of the litigation.  *See* Defs.' Opp'n at 13–18.  Nor could they.  The D.C. Circuit held long ago that NARA must "provide[] an explanation of what factors were considered in arriving at the conclusion that the records listed do not 'have sufficient administrative, legal, research, or other value to warrant their continued preservation.'"  *Am. Friends Serv. Comm. v. Webster*, 720 F.2d 29, 65 (D.C. Cir. 1983) (quoting 44 U.S.C. § 3303a(a)).  An unadorned declaration that records have "little or no research value" falls far short of that standard.

Thus, Defendants' litigation effort to defend NARA's actions lacked a "reasonable basis in law." *SecurityPoint Holdings*, 836 F.3d at 39.  Combining this conclusion with the court's earlier determination that NARA's prelitigation actions were unreasonable, the court finds that the government's "position" was not "substantially justified" and Plaintiffs are entitled to a fee award under the EAJA.

## C.

The court turns next to the parties' disagreement over the reasonableness of Plaintiffs' requested fees.  Defendants maintain that Plaintiffs' fee award should be reduced by one-sixth to reflect the fact that the court found in Defendants' favor with respect to the Detainee Escape Reports, one of the six groups of ICE records at issue.  Defs.' Opp'n at 18–19.  Citing the Supreme Court's decision in *Hensley v. Eckerhart*, 461 U.S. 424 (1983), Defendants contend that because "Plaintiffs' arguments for vacatur of the Detainee Escape Reports were closely related to their generalized arguments . . . ., it is not possible to separate out the hours expended on the unsuccessful portion of the lawsuit."  Defs.' Opp'n at 19.

But Defendants misapply *Hensley*.  The Court in *Hensley* held that "the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees." *Hensley*, 461 U.S. at 440.  "A first cut in measuring that extent depends, where there are multiple claims for relief, on whether the successful claims are 'related' to the unsuccessful ones." *SecurityPoint Holdings*, 836 F.3d at 40.  "Hours spent on unsuccessful claims that are 'distinct in all respects from' the successful ones should be excised," but where "successful and unsuccessful claims are related, 'a plaintiff who has won substantial relief should not have his attorney's fee

reduced simply because the district court did not adopt each contention raised.'"  *Id.* (quoting *Hensley*, 461 U.S. at 440).

Here, the limited portion of the claim on which Plaintiffs did not prevail was not "distinct in all respects" from the successful aspects of their claim.  Plaintiffs brought a single claim under the APA, asserting that NARA's approval of the ICE schedules was arbitrary and capricious.  Compl., ECF No. 1, at 40–41.  Plaintiffs raised multiple arguments in support of that single claim, but the court needed to address only two to find in Plaintiffs' favor.  *CREW*, 2021 WL 950142, at *7.  The sole aspect of the claim on which Plaintiffs failed—NARA's decision not to permanently retain Detainee Escape Reports—was due not to a finding that NARA had properly made and explained its research-value assessment as to those records but rather to Plaintiffs' inability to "identif[y] . . . any comments suggesting that [those reports] have significant research value."  *Id.* at *9.  Not surprisingly then, Plaintiffs' "briefing ma[de] little mention of the Detainee Escape Reports."  *Id.* at *9 & n.2.  The Detainee Escape Reports were, as Plaintiffs correctly state, "a peripheral part of the case."  Pls.' Reply at 9.  They were not a "distinct" aspect of Plaintiffs' claim, as to which *Hensley* requires a reduction in the fee award.  *Cf. SecurityPoint Holdings*, 836 F.3d at 41 (reducing fee award where the court declined to reach one of the plaintiff's theories "to which it devoted much of its briefing" and the plaintiff's "results f[ell] short of matching [its] efforts").

In the end, Plaintiffs won the vacatur they sought as to five of the six records categories on ICE's disposition schedule.  *See Goos v. Nat'l Ass'n of Realtors*, 68 F.3d 1380,1387 (D.C. Cir. 1995) (stating that the "focus must be on whether the hours were reasonably expended in relation to the results obtained").  A reduction in their fee "based solely on [their] failure to prevail on a related [aspect of their] claim" is not justified.  *Id.*

## III.

For the foregoing reasons, Plaintiff's Motion for Attorney's Fees, ECF No. 23, is granted.

The court awards Plaintiffs $60,779.41 in fees. *See* Pls.' Reply at 11.

Dated:  June 8, 2022

_____
Amit P. Mehta
United States District Court Judge